FRANKLIN SHERWOOD AND WIFE *vs.* FANNY S. WHITING AND OTHERS.

Fairfield County, Oct. T., 1886. PARK, C. J., CARPENTER, PARDEE, LOOMIS and GRANGER, JS.

A misdescription in a deed does not affect its operation so long as the property intended to be conveyed is otherwise so described that it can be identified.

Especially is this so where the mistake is in some statement of fact with regard to the title, and not in the description of the property.

A made a conveyance to B of a quantity of real estate described thus:— " All the real estate of D deceased, which was distributed to E and afterwards conveyed by E to me." In point of fact E had conveyed to A before the distribution and not after, but his deed fully described the land conveyed to A. Held, in a suit for the correction of the deed, that it needed no correction.

And held that the question whether the conveyance by E to A was not made to defraud creditors and whether therefore E could recover the property back, did not enter into the question whether the deed of A was sufficient to convey the property.

[Argued October 26th, 1886—decided January 26th, 1887.]

SUIT for the reformation of a deed; brought to the Superior Court in the county of Fairfield. Facts found and case

reserved for advice. The case is sufficiently stated in the opinion.

*J. C. Chamberlain*, for the plaintiffs.

*H. J. Curtis* and *J. A. Joyce*, for the defendants.

PARDEE, J. In 1848 Oran Sherwood of Fairfield died intestate, leaving real estate, a widow, and four children. Of these last was Franklin Sherwood, the plaintiff. On March 1st, 1856, he conveyed his undistributed interest in his father's estate to his mother, saying in his deed that he intended " to convey my entire undivided title and interest in and to all the estate of my father, the said Oran Sherwood, late deceased, within said tract of land, as heir at law of my said father therein." This conveyance was made for the purpose of concealing the property from his creditors. On June 16th, 1856, distribution was made. On February 19th, 1883, his mother, desiring and intending to reconvey to him precisely what he had conveyed to her, executed and delivered a deed to his wife, for his benefit, in which she described the property as follows : "All the real estate of Oran Sherwood deceased, which was distributed to Franklin Sherwood in the distribution of said estate, and afterwards conveyed to me by said Franklin Sherwood by sundry deeds, as recorded in Fairfield land records." In point of fact Franklin Sherwood had conveyed to her *before* not *after* distribution. Mrs. Sherwood, the grantor, is dead. Franklin Sherwood asks in effect that her heirs at law may be compelled to execute a corrected deed. They resist, and insist that inasmuch as he conveyed the land to his mother for a fraudulent purpose equity will leave him where he placed himself. If we should concede that if Mrs. Sherwood had refused to reconvey the land to her son the court would not come to his relief, this case would not be disposed of. She made a conveyance ; if that is legally sufficient in form the plaintiff's title is unassailable ; and for the purpose of determining the question as to its suffi-

JANUARY, 1887.

ciency in form the tests, and only those, are to be applied which would be applied to a deed executed upon a valuable consideration. Every concession which would be made in behalf of the latter is to be made in behalf of the former. And, if the deed had been made to a purchaser for full and valuable consideration, we think the heirs of the grantor could not obtain the assistance of any court in an effort to inherit both the consideration and the property. There is and can be no doubt or question as to the identity or location of the piece of land in which Franklin Sherwood had an interest. In his deed to his mother he gave the boundaries and contents; he stated that there had then been no distribution, plainly implying that there would be; such distribution was made and recorded; by this his part was set to him by metes and bounds; and the mother in her reconveyance declares that she intends to restore to him precisely that which he conveyed to her, and refers to the recorded distribution, where it is described to a certainty in every particular. Having secured absolute certainty by giving metes and bounds and quantity and naming visible monuments, by way of supererogation the grantor undertakes to mention a certain event in the history of the title to that land and mistakenly states that it occurred before the conveyance to herself when in fact it occurred after. The mention affects no metes or bounds or monuments, no courses or distances; no doubt as to identity is raised. Every person reading it had either actual or constructive notice of the mistake in stating the order of those events; for both distribution and deed were upon the public records and declared that order. There is no finding that any person has acquired any right or interest in or title to the premises by conveyance from either Oran Sherwood or his mother, or by adverse occupation, which conflicts with the plaintiff's claim of ownership. As a matter of law, as a rule of construction, this needless and erroneous mention of an incident in the history of the title to a piece of land is to be held to have no force as against the mention of metes, bounds, courses, distances

and visible monuments, when the question is whether the deed is sufficient as to form to convey the land intended.

It is the duty of courts to uphold rather than to destroy deeds. It is the fundamental canon of interpretation of contracts to discover and give effect to the intention of the parties. In the case before us the finding makes it certain that the mother intended to reconvey to her son precisely that interest in his father's estate which he had conveyed to her before distribution. When a piece of land is so described that a surveyor's chain can be stretched along its boundaries with absolute certainty as to each course, distance and monument, a transposition of dates in stating previous conveyances constituting the chain of title, will not cloud or affect that certainty, nor destroy the operative force of a conveyance.

We cite a few of the many instances given in the reports where courts, in the discharge of their duty to find and carry out the intent, have declared that certain words of description in deeds are to be of no effect, which apparently are far more likely to give rise to a doubt as to identity than is the erroneous word in the deed before us. In *Worthington* v. *Hilyer*, 4 Mass., 196, the words of description are,— " all that my farm of land in said Worthington on which I now dwell, being lot No. 17, in the first division." The land demanded in that action was not included in lot No. 17, yet the court held that it passed, the first being sufficient to ascertain the estate intended to be conveyed, and that the additional description inconsistent with the former was to be rejected, because, if it were to be considered as an essential part of the description, the deed would be void for repugnancy. In *Cato* v. *Thayer*, 3 Greenl., 71, the question was as to one of the lines of the town of Dresden, which was described as a course " north-northwest, including the whole of Gardiner's farm "; and the court held that the whole farm was included, although intersected by a line running north-northeast, because the farm was to be considered as a monument. In *Keith* v. *Reynolds*, 3 Greenl., 393, the description was,—" a certain tract of land or farm

in Winslow, including in the tract which was granted to Ez. Pattee," and afterwards there was added a particular description by courses and distances, which did not include the whole farm. It was contended that the particular description should prevail, in preference to the other, which was more general and uncertain; but it was decided that the first description was certain enough, and that it was to be adopted rather than the description by courses and distances, which was more liable to errors and mistakes. In *Lodge* v. *Lee*, 6 Cranch, 237, the description was,—" all that tract or upper island of land called Eden"; and then it was added, " beginning at a maple tree," and describing the land conveyed by bounds, courses and distances; but so as not to include all the island. The court held that the whole island passed. In *Jackson* v. *Barringer*, 15 Johns., 471, the grant was,—" the farm on which *J. J. D.* now lives," which was bounded on three sides, and to contain eighty acres in one piece. The farm contained a hundred and forty-nine acres; and the decision was that the whole farm passed. In *Swift* v. *Eyres*, Cro. Car., 546, the land conveyed was described as " all the grantor's lands lying in Chesterton, viz. seventy-eight acres of land, with all profits, tithes, &c."; and then were added the words, " all which lately were in the occupation of Margaret Peto." It was found that the tithes of these glebe lands were never in the tenure of Margaret Peto, though other lands and tithes were. But it was held, notwithstanding, that the lands and tithes first described passed. In *Eliot* v. *Thatcher*, 2 Met., 44, note, the land conveyed was thus described,—" all my real property or homestead so called lying and being in Dartmouth, together with about thirty acres of land, let the same be more or less; for more particular boundaries reference may be had to a deed given by Clark Ricketson to David Thatcher of the above mentioned premises." It appeared that the grantor was seized only of a part of the land which he bought of Ricketson, but he had bought some land adjoining thereto, being in the whole about thirty acres, and it was decided that the whole passed; it being held that the

word "homestead" was a sufficiently certain description, and that the grant ought not to be limited and restrained by the subsequent reference to Ricketson's deed, it being a well known rule of construction of deeds that a precedent particular description shall not be impaired by a subsequent general description or reference, and that deeds are to be construed according to the intentions of parties; and that if there be any doubt or repugnancy in the words, such construction is to be made as is most strong against the grantor, because he is presumed to have had a valuable consideration for what he parts with. In *Hastings* v. *Hastings*, 110 Mass., 280, *A*, the owner of a farm, conveyed in 1853 by deed " the farm on which I now live, and is the same which was deeded to me by *J. G.*, March 15th, 1810, reference being had to said deed." A lot of land which had formed part of the farm for forty years was not included in the deed of March 15th, 1810, but had been conveyed to *A* by *J. G.* by a deed dated January 11th, 1810. It was held that this lot passed by the deed of *A*. In *Melvin* v. *Proprietors, &c.*, 5 Met., 15, the heirs of *K* gave deeds to *C* of land which they described as the " estate on which *C* now lives," or the " estate called the *C* farm," and " being the same which was conveyed by *M* to *K* by deed " bearing a certain date; and it was shown that *C*, as lessee of *K* and otherwise, had previously occupied the whole farm for many years. It was held that the deeds conveyed the right and title of the heirs to the whole farm, although the deed from *M* to *K*, which was therein referred to, did not include the whole. The court says:—" Another rule of construction is, that if the description be sufficient to ascertain the estate intended to be conveyed, it will pass, although some particular circumstance be added inconsistent with the description. * * * If the land had been conveyed by reference to known monuments and boundaries it would be clear that a subsequent reference to the mortgage deed would not operate by way of restriction; and we think there is no good reason why the description in these deeds, the boundaries of the farm conveyed being certain and undoubtedly well known to the

parties, should not be held equally conclusive." In *Deacons &c.* v. *Walker*, 124 Mass., 69, *A* mortgaged a " farm " known as the " *T* place,"—" together with all the buildings thereon, including mills, water-power, machinery and fixtures belonging thereto "—" being the same estate which was conveyed to me by *B* by her deed " duly recorded, " to which said deed and the record thereof reference is made for a description of said premises." The deed from *B* did not include a small parcel of land on which stood the only mill of *A* with the connected buildings, but did include the dam and pond which furnished power to the mill. It was held that this parcel passed by the deed to *A*. The court said:— " Reference is made to the Holden deed, not for the purpose of fixing the metes and bounds, as if describing the lot conveyed, but to show the grantor's chain of title." In *Andrews* v. *Pearson*, 68 Maine, 19, in a conveyance of a " homestead farm," one of the parcels composing it was described as " twelve and a half acres out of lot numbered eight in the first range." It was held that the whole parcel passed although it in fact contained twenty-five acres. The court said :—" Freeman Allen was the owner of a farm of ancient and well-defined boundaries. He undertook to convey it to the plaintiff. He first described it as his ' homestead farm.' He then undertook to give a further description of it by naming the several parcels or portions of which it was composed. One of them is described as twelve and a half acres out of a lot numbered eight in the first range. This portion of the farm in fact contained twenty-five acres. The question is whether this mistake left half of this parcel unconveyed. We think not. We think it falls within the principle '*falsa demonstratio non nocet*'; a mere false description in one particular, where enough remains to make it reasonably certain what premises were intended to be conveyed, will not defeat the conveyance." In *Union* v. *Skinner*, 9 Missouri Appeals, 189, it is held that " when one sells a lot by its number as laid out in a recorded plot, and in giving a further description mis-states the boundary line thereof, the monument will prevail and the further false

description be rejected." In *Green Bay &c.* v. *Hewett*, 55 Wis., 96, a grantor by deed conveyed to the plaintiff and its successors and assigns forever all his claim, right, title and interest in or to a piece of land ; in a subsequent clause he declares that the interest and title intended to be conveyed by the deed is only that acquired by virtue of a deed to him ; this last conveyed to him only an undivided half. It was held that his whole interest passed. In *Wiley* v. *Lovely*, 46 Mich., 83, a deed described the land conveyed as lot seventy-seven of the original plot of the village as recorded ; this plot contained only twenty-nine lots ; another plot, unrecorded, designated the lot as seventy-eight ; another unrecorded plot contained the lot, and it was shown that it had been held, taxed and dealt with for more than twenty-five years as lot seventy-seven. It was held that the error in description did not invalidate the conveyance. In *Dwight* v. *Tyler*, 49 Mich., 614, it was held that " when a deed contains a wrong description, but the land can be identified by inquiry based on land-marks referred to, the title held by the grantor is not merely equitable but legal, and may be incumbered as such."

The Superior Court is advised that the deed to Mary A. Sherwood, one of the plaintiffs, in its present form is effective to convey to her all of the right, title and interest in the estate of Oran Sherwood which Franklin Sherwood conveyed to his mother, including the land upon which the right of dower rested. For that reason and for no other that court is advised to dismiss the petition.

In this opinion the other judges concurred.