## HARVEY S. PECK *vs.* LEWIS W. LEE.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 23d, 1929—decided January 6th, 1930.

*Robert J. Woodruff,* with whom, on the brief, was *John G. Confrey,* for the appellant (defendant).

*Claude B. Maxfield,* for the appellee (plaintiff).

MALTBIE, J. This appeal raises two questions. One grows out of the overruling by the court of the de-

fendant's claim that he holds title to the lot of land in question. A tract one hundred and fifty feet long on the northerly side of Atwater Street had come by devise from her husband to Fanny J. Lee. She conveyed a lot at the east end of the tract thirty-seven and one half feet wide to one Krafeik, a lot forty-two and one half feet wide at the west end to a daughter Rhoda Peck, and a lot next the one conveyed to Krafeik thirty-five feet wide to the defendant, a son. There remained a lot thirty-five feet wide and this she attempted to convey to her daughter Rhoda. She bounded it correctly as to the front and rear and correctly stated its width, but she mistakenly bounded it on the east upon the land of the defendant and on the west upon the land of Krafeik. Thereafter Rhoda Peck died and the land was distributed to the plaintiff, her husband. He discovered the errors in the description and brought an action against Fanny J. Lee seeking to correct it so as accurately to bound the land and ultimately secured judgment. While the action was pending the defendant learned of it and obtained from Mrs. Lee a quitclaim deed of the lot upon the strength of which he now claims title. Despite the misdescription in Mrs. Lee's deed to her daughter, when it is read in the light of the surrounding circumstances there could be no doubt of the precise lot of land she intended to convey and the deed was not void for uncertainty. *Brooks Bank & Trust Co.* v. *Dineen,* 97 Conn. 536, 539, 117 Atl. 551; *Sherwood* v. *Whiting,* 54 Conn. 330, 333, 8 Atl. 80; *Scofield* v. *Lockwood,* 35 Conn. 425, 428; 2 Devlin on Real Estate (3d Ed.) § 1012; 2 Tiffany on Real Property (2d Ed.) p. 1669. As against her, the plaintiff had an equitable right to have the deed corrected so as properly to describe the tract. The defendant, who gave no consideration for the deed to him and took it with

notice, is certainly in no better situation. The trial court was right in holding that the deed to the defendant conveyed no title to the lot.

The other question arises out of a claim of the defendant that he owns a mortgage for $700 which binds the lot in question. When Mrs. Lee's husband bought the tract of land and when she inherited it this mortgage was upon it. When Mrs. Lee conveyed the lot at the easterly end of the tract to Krafeik she obtained a release of that land from the mortgage. In 1912, to relieve her of the interest charges and after a family conference, another son of Mrs. Lee, Burton, acquired the mortgage. A house then stood on the lot at the westerly end of the tract and Mrs. Lee made her home there with her daughter Rhoda and the plaintiff. When she quitclaimed this lot to her daughter, in the same year Burton Lee acquired the mortgage, he at her request and with the defendant's knowledge released the premises from the mortgage. In 1917 Mrs. Lee made the quitclaim to the defendant of the lot next that of Krafeik, there being no consideration for it except such sums as he had contributed to his mother's support. In 1919 came the conveyance of the lot in question to Rhoda Peck, without consideration. Later in the same year Burton Lee assigned the mortgage and note, without recourse to the defendant, he paying $400 therefor. The note then bore indorsements indicating that no payment had been made on the principal, but that the interest had been paid to date. As a matter of fact neither Rhoda Peck nor the defendant had made any payments of interest on it. Although after 1919 Rhoda Peck by reason of her ownership of the lot in question was the only person who could be obligated to pay interest on the mortgage, she did not up to the time of her death in 1927 make any such payments nor did the defendant

make any demand on her for them. After her death the defendant presented a claim upon her estate for a certain sum due upon a note other than that secured by the mortgage and this claim was allowed and paid, but he made no other claim against the estate, although the mortgage was payable upon demand, nor did he make any demand upon the plaintiff for the payment of interest or principal of the mortgage nor any claim that he had any interest in the land. It was only when, after the discovery by the plaintiff of the outstanding mortgage of record, and when the defendant was asked if he claimed anything under it, that he asserted that he would not release it unless the principal sum and interest since he acquired it were paid. At the trial of the action the defendant failed to produce either the note or the mortgage. When the defendant acquired the mortgage, he was the owner of one of the only two lots which could be bound by it and his sister, whom he had assisted financially, was the owner of the other lot, and the court finds that he then intended to discharge it and did in fact destroy both the mortgage and the note. The findings of the court are not attacked as unsupported by the evidence and if we regard that as to the defendant's intention to discharge the mortgage as a conclusion from the other facts found, certainly it would be a most reasonable one. We have then an intention on the part of the defendant to terminate the lien of the mortgage, accompanied by an act clearly manifesting that intent. Here are the necessary elements to constitute an abandonment. *Stevens* v. *Norfolk*, 42 Conn. 377, 384; *New York, N. H. & H. R. Co.* v. *Cella*, 86 Conn. 275, 278, 85 Atl. 521; *American Brass Co.* v. *Serra*, 104 Conn. 139, 148, 132 Atl. 565; *Stueck* v. *Murphy Co.*, 107 Conn. 656, 662, 142 Atl. 301. While eminent authority lays it down that a legal title to

land perfected into a grant or vested by a deed may not be lost by abandonment, we have never recognized that doctrine as including incidental rights in land though resting in grant, as witness the cases involving easements already cited. In *Miller Co.* v. *Grussi,* 90 Conn. 555, 559, 98 Atl. 90, we point out that "inchoate or equitable rights in land may be surrendered or lost by abandonment," and there refer to cases in which it was held that leasehold interests might be abandoned. While in our law a mortgage in form and legal theory is a conveyance of a fee and the mortgagee acquires a right of possession under it, yet his estate is, except for a limited purpose, regarded as personal property and the mortgage as merely security for the debt; *McKelvey* v. *Creevey,* 72 Conn. 464, 45 Atl. 4; and it is as true here as elsewhere that whatever extinguishes the debt discharges the mortgage. *Androscoggin Savings Bank* v. *McKenney,* 78 Me. 442, 444, 6 Atl. 877; *Atwater* v. *Underhill,* 22 N. J. Eq. 599, 602; 41 Corpus Juris, 785. When the debt is gone a reconveyance is not necessary to put an end to the rights of the mortgagee. *Munson* v. *Munson,* 30 Conn. 425, 437. A debt may certainly be abandoned and we see no valid reason why a mortgagee may not also abandon his right of security under the mortgage. In the instant case the defendant, having done that, cannot now insist upon the continuance of the mortgage as an enforceable lien upon the property.

There is no error.

In this opinion the other judges concurred.