ISIDOR GLOTZER ET AL. *v.* JOSEPH C. KEYES ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued December 8, 1938—decided March 8, 1939.

*Josiah H. Peck,* with whom was *Irving I. Rachlin,* for the appellants (plaintiffs).

*Louis M. Schatz,* with whom, on the brief, was *Nathan Schatz,* for the appellant (defendant The Hartford-Connecticut Trust Company).

*I. E. Finkelstein,* for the appellee (named defendant).

HINMAN, J.   This action was brought to foreclose a mortgage given March 31, 1927, by Albert Wax of Hartford to secure two notes of $3584.26 each, one payable to Isidor Glotzer, described in the mortgage as of the city of New York, and the other to Isadore Glotzer of Hartford.   Each note was payable $125 every six months for three and one-half years with specified increased semi-annual payments thereafter, and with provision for acceleration upon default.   The mortgage stated that the premises were subject to a prior mortgage for $14,500 to The Hartford-Connecticut Trust Company.   The complaint alleged that the Trust Company now has two mortgages for $6000 and $4000 respectively, both subsequent to the plaintiffs' mortgage, and made it a party defendant.   The named defendant is the present owner of the premises.   Both defendants filed answers and cross-complaints alleging facts which, so far as are now material, are in-

cluded in the finding, and making claims for relief which include that accorded by the judgment rendered. The finding, with minor corrections within the assignments of error, includes the following facts.

In September, 1925, the property described in the complaint was owned by The Hartford Construction Corporation which gave The Hartford-Connecticut Trust Company a mortgage thereon for $14,500, which was duly recorded and still remains unreleased of record. In March, 1927, title to the property was transferred to Wax, who on March 31, 1927, executed a second mortgage which is the one now sought to be foreclosed. No Isidor Glotzer was present at the time of execution of this mortgage or at any subsequent transactions connected with the property or at the trial. Wax paid three semi-annual instalments of principal and interest to Isadore Glotzer, who signed receipts for the full amounts in his own name. In December, 1928, the plaintiffs started foreclosure proceedings against Wax but the action was not pursued. On September 18, 1929, Helene Schumann brought suit against Wax and attached the property. On October 29, 1929, the plaintiffs withdrew their first foreclosure action and on October 30th started another foreclosure suit, naming Wax and Helene Schumann defendants. On January 17, 1930, Helene Schumann obtained a judgment against Wax and on January 31st filed a judgment lien in the Hartford land records. On October 14, 1930, Isadore Glotzer called on Wax and negotiated for a transfer of the property. He brought with him a quitclaim deed in which he was named as grantee with Wax as grantor, and paid Wax $50 to execute it. Wax did so with the understanding that he was conveying all his interest in the property to the holder of the second mortgage and that the mortgage was thereby discharged. Wax had never met or

seen Isidor Glotzer, did not know that he had or claimed to have an interest in the second mortgage and Isadore neither said nor did anything to so indicate. In taking title Isadore intended to and did act in behalf and for the benefit of both plaintiffs. No demand for payment has been made on Wax since the conveyance from him, and Isadore has since done nothing about learning the identity of the owner of the property, the amount of the incumbrances or any other fact important to a mortgagee.

On October 28, 1930, Helene Schumann started an action for foreclosure of her judgment lien, naming Isadore Glotzer defendant as owner of the property, and obtained judgment and recorded a certificate of foreclosure on December 30, 1930. On January 7, 1931, she quitclaimed the property to the defendant Trust Company and the deed was duly recorded. The Trust Company was represented by a competent lawyer who apparently was misled by the similarity of names of the Glotzers and advised that the title was free and clear of incumbrances; it would not have accepted the conveyance if it had known that the plaintiffs claimed an interest under their mortgage. Isadore Glotzer, who had borrowed money from the defendant Trust Company, gave it a financial statement on March 4, 1930, in which he listed as an asset his interest in the mortgage he now seeks to foreclose, but on May 29, 1931, he gave that bank another financial statement in which he did not so list it as an asset. The bank owned the property between January 7, 1931, and June 20, 1931, but neither plaintiff made any demand on it for payment. On June 20, 1931, the Trust Company sold the premises, free of all incumbrances, to the defendant Keyes for $12,000, $2000 of which was paid in cash and the balance was evidenced by two purchase money mortgages, one for

$6000 and the other for $4000, the latter being reduced to $1500 at the time of the trial. At the time of his purchase of the premises, Keyes was represented by a competent lawyer who searched the title and Keyes was advised, and believed, that the premises were free and clear of all incumbrances. He would not have purchased or made any of the payments had he known that the plaintiffs claimed an interest under their original second mortgage or the bank a $14,500 first mortgage. Neither of the plaintiffs has ever made demand on him for payment. On September 29, 1937, Keyes entered into an agreement for the sale of the premises. Thereafter the fact that the plaintiffs' mortgage was unreleased of record was discovered and called to the attention of Isadore Glotzer, and this action was brought October 21, 1937. The trial court concluded that the mortgage from The Hartford Construction Corporation to the Trust Company was merged in the title by the conveyance to the latter from Helene Schumann, that the plaintiffs' mortgage was merged by the conveyance from Wax to Isadore Glotzer, that they have abandoned their security and that they are estopped from now asserting any rights under their mortgage, and rendered judgment that both mortgages be discharged of record as invalid liens and incumbrances. The assignments of error pertaining to the conclusion that the plaintiffs abandoned their security and the supporting facts found are decisive of the issues on this appeal.

An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties. *Beach* v. *Isacs*, 105 Conn. 169, 176, 134 Atl. 787. Equity will not afford its aid to one who by his conduct or neglect has put the other party in a situation in which it would be

inequitable to place him. *Bassett* v. *City Bank & Trust Co.*, 116 Conn. 617, 630, 165 Atl. 557. Abandonment in its general sense is the intentional relinquishment of a known right. 1 Am. Jur., p. 2. The doctrine has its most common application in the case of easements and other incorporeal hereditaments. Thus the owner of an easement may lose his right, especially if a third party has become interested in the servient estate after such abandonment and it would operate unjustly upon him if the exercise of the easement were resumed in favor of the dominant estate. Idem, page 6, citing *New York, N. H. & H. R. Co.* v. *Cella*, 88 Conn. 515, 91 Atl. 972, Anno. Cases, 1917D, 590. In this state a mortgagee may likewise abandon his right of security under the mortgage. In *Peck* v. *Lee*, 110 Conn. 374, 148 Atl. 133, we say (p. 377): "While eminent authority lays it down that a legal title to land perfected into a grant or vested by a deed may not be lost by abandonment, we have never recognized that doctrine as including incidental rights in land though resting in grant, as witness the cases involving easements already cited. In *Miller Co.* v. *Grussi*, 90 Conn. 555, 559, 98 Atl. 90, we point out that 'inchoate or equitable rights in land may be surrendered or lost by abandonment,' and there refer to cases in which it was held that leasehold interests might be abandoned. While in our law a mortgage in form and legal theory is a conveyance of a fee and the mortgagee acquires a right of possession under it, yet his estate is, except for a limited purpose, regarded as personal property and the mortgage as merely security for the debt; *McKelvey* v. *Creevey*, 72 Conn. 464, 45 Atl. 4; and it is true here as elsewhere that whatever extinguishes the debt discharges the mortgage. *Androscoggin Savings Bank* v. *McKenney*, 78 Me. 442, 444, 6 Atl. 877; *Atwater* v. *Underhill*, 22 N. J. Eq. 599, 602; 41 Corpus

Juris, 785. When the debt is gone a reconveyance is not necessary to put an end to the rights of the mortgagee. *Munson* v. *Munson,* 30 Conn. 425, 437. A debt may certainly be abandoned and we see no valid reason why a mortgagee may not also abandon his right of security under the mortgage."

To constitute an abandonment there must be an intention to abandon or relinquish accompanied by some act or omission to act by which such intention is manifested. *Stevens* v. *Norfolk,* 42 Conn. 377, 384; *Collins* v. *Lewis,* 111 Conn. 299, 303, 149 Atl. 668; 1 C. J. S., p. 8. While mere nonuser and lapse of time alone are not enough to constitute abandonment, they are competent evidence of an intent to abandon, and as such may be entitled to great weight when considered with other circumstances, and abandonment may be inferred from circumstances, such as failure by acts or otherwise to assert any claim to the right alleged to have been abandoned, or may be presumed from long continued neglect. *New York, N. H. & H. R. Co.* v. *Cella,* supra, 522; *Derby* v. *Alling,* 40 Conn. 410. 436; 1 Am. Jur., p. 11; *Keane* v. *Cannovan,* 21 Cal. 291, 303, 82 Am. Dec. 738. Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon, as in *Peck* v. *Lee,* supra, 377, where it was found that the mortgagee had destroyed the mortgage and the note which it secured, but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances. *Raritan Water Power Co.* v. *Veghte,* 21 N. J. Eq. 463, 480. *McArthur* v. *Morgan,* 49 Conn. 347, 350, sustained a finding as a

fact that a right to use water power of a stream in connection with a millsite, as to which there had been for eight years no manifestation of an intent to utilize it, had been abandoned. See also *Banks* v. *Judah,* 8 Conn. 145, 161. Aside from the destruction of the note and mortgage, the facts in *Peck* v. *Lee,* supra, resemble those in the instant case. There, as here, the mortgagee, Lee, for several years made no demand upon the owner of the equity or claim against her estate, after her decease, for interest or principal and only asserted a claim under the mortgage when Peck, after discovering the outstanding mortgage of record, asked him if he claimed anything under it.

It is conceded that, so far as concerns the purported interest of Isidor Glotzer, in all of the transactions pertaining to the plaintiffs' mortgage Isadore acted as agent for him, and the finding that in taking title to the property he intended to and did act in behalf and for the benefit of both, was warranted. Although the deed from Wax was to Isadore alone, the circumstances would be sufficient to raise a constructive trust in favor of Isidor as to his interest therein. *Kievman* v. *Grevers,* 122 Conn. 406, 409, 189 Atl. 609; *Lowe* v. *Hendrick,* 86 Conn. 481, 483, 85 Atl. 795; Restatement, Restitution, § 194, Comment a; 65 C. J. 434. From the time when Wax conveyed his title to Isadore there was nothing until the present action was brought to indicate that the plaintiffs had or made any claim under their mortgage. They did nothing, after the Schumann foreclosure, to learn the identity of the successive owners, the amount of the incumbrances, or any other fact important to a mortgagee. No demand for payment of principal or interest was made upon Wax, upon Helene Schumann after her foreclosure judgment, upon the Trust Company while it owned the property, or upon Keyes after he acquired title.

The inclusion of Isadore Glotzer's interest in the mortgage in his financial statement to the Trust Company before the conveyance from Wax and its omission afterward is of some significance. He stood by, giving no indication of any interest in the premises, while the various changes in title occurred and the present defendants came into a situation where the existence of an incumbrance to the plaintiffs would be radically detrimental to the defendants. It was not until, after nearly seven years of inaction, the attempt of the defendant Keyes to clear the record title disclosed to Glotzer a situation which might be turned to the plaintiffs' advantage, that he first asserted any claim of a continued mortgage interest by bringing the present action. The inference from acquiescence for so long a time is "practically irresistible." *Hurd* v. *Hotchkiss,* 72 Conn. 472, 481, 45 Atl. 11. Under such circumstances the assertion of plaintiffs' present claim is not to be regarded, in equity, "with much complacency." *Banks* v. *Judah,* supra, 161. Abandonment is a question of fact. The conclusion that the plaintiffs have abandoned their security has sufficient support in the facts found and is aided by the equitable principles above adverted to. As the sustaining of this conclusion is sufficient to support the judgment as to the plaintiffs, the validity of further conclusions reached by the trial court, that the mortgage was merged in the title and that the plaintiffs are estopped from now asserting any rights under it, need not be specifically considered.

The general rule is that where a mortgagee acquires the fee or equity of redemption in the mortgaged premises, and there is no intermediate estate so that the whole title becomes vested in him, merger of the mortgage interest into the fee occurs in the absence of evidence of a contrary intention or prejudice resulting

to the mortgagee-grantee. *Simpson* v. *Hall,* 47 Conn. 417; *Beach* v. *Isacs,* 105 Conn. 169, 175, 134 Atl. 787; 2 Jones, Mortgages (8th Ed.) § 1080; 1 Wiltsie, Mortgage Foreclosure (4th Ed.) § 265; 41 C. J. 775. The plaintiffs' mortgage being held not to have been an incumbrance intervening between the Trust Company mortgage and the title of Helene Schumann, the conclusion that the Trust Company's original mortgage merged with the conveyance from Schumann was correct.

There is no error.

In this opinion MALTBIE, C. J., AVERY and BROWN, Js., concurred.

JENNINGS, J. (dissenting). The trial court found for the defendants on the ground of merger, estoppel and abandonment. There was no merger because when Isadore Glotzer purchased the equity of redemption from Wax, the judgment lien of Schumann intervened between the Glotzer mortgage and Wax's equity. To have a merger the greater and lesser estate must coincide in the same person and the same right without any intermediate estate. 2 Jones, Mortgages (8th Ed.) § 1080. "A merger is not caused by the holder of part of a mortgage buying the equity of redemption." 19 R. C. L., p. 486. *Carpenter* v. *Gleason,* 58 Vt. 244, 248, 4 Atl. 706. There are no affirmative acts on which an estoppel can be based. Estoppel can be based on silence only when there is a duty to speak. *Taylor* v. *Ely,* 25 Conn. 250, 258; 21 C. J. 1150; 9 R. C. L., p. 692. The facts disclose no such duty here.

Abandonment is defined in the majority opinion. The determinative element is the intent. *Kievman* v. *Grevers,* 122 Conn. 406, 409, 189 Atl. 609. Abandonment only applies to easements and incorporeal

hereditaments. 3 Washburn, Real Property (6th Ed.) § 1888; 25 Lawyer and Banker 308 (S-D '32). Our case of *New York, N. H. & H. R. Co.* v. *Cella*, 88 Conn. 515, 522, 91 Atl. 972, illustrates its application to easements.

*Peck* v. *Lee*, cited in the majority opinion, appears to stand alone, not only in Connecticut but in this country. That aside, it differs from the present case in that the mortgagee destroyed the mortgage and note with the intention of abandoning his lien. Idem, p. 377. The facts here much more nearly resemble those in *Ensign* v. *Batterson*, 68 Conn. 298, 36 Atl. 51. A junior mortgagee was omitted from a decree of foreclosure although his mortgage was duly recorded. He knew that he was not foreclosed but stood by for fourteen years, relying on the record of his mortgage, while the property was twice sold and finally built upon. He "was under no obligation to give any other notice of the existence of his mortgage to prior incumbrancers or their grantees, than that afforded by the land records of the town." Idem, p. 306. The vitality and reality of the title of a mortgagee is further illustrated by the fact that though action on the note may be barred by the Statute of Limitations this will not necessarily bar foreclosure. *Downey* v. *Moriarty*, 81 Conn. 442, 445, 71 Atl. 581. See also *Beach* v. *Osborne*, 74 Conn. 405, 50 Atl. 1019.

Assuming that a mortgage can be abandoned, there was, in my opinion, no evidence whatever of an intent to abandon by the New York Glotzer and insufficient evidence on the part of the Hartford Glotzer. I think the judgment should be reversed.